SCARINCI & HOLLENBECK, LLC
ATTORNEYS AT LAW
1100 VALLEY BROOK AVENUE
P.O. BOX 790
LYNDHURST, NEW JERSEY 07071-0790
Telephone:  (201) 896-4100
Attorneys for Defendants Paterson Public Schools,
Donnie W. Evans, ED.D. and Jennie Rivera

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EUGENE WILLIAMS and BOBBIE JEAN WHITE, individually and as ADMINISTRATORS OF ONYNX X. WILLIAMS, DECEASED,<br><br>Plaintiffs,<br><br>v.<br><br>THE BOARD OF EDUCATION OF PATERSON, THE PATERSON PUBLIC SCHOOL DISTRICT, designated collectively as THE PATERSON PUBLIC SCHOOLS, DONNIE W. EVANS, ED.D in his official capacity as superintendent of THE PATERSON PUBLIC SCHOOLS, JENNIE RIVERA, K&M TRANSPORT, INC., AIGA YOUSSEF, PORFIRIO FARFUN, and THE BOARD OF EDUCATION OF THE BERGEN COUNTY SPECIAL SERVICES SCHOOL DISTRICT – VENTURE PROGRAM<br><br>Defendants. | Civil Action No.<br><br><br>**NOTICE OF REMOVAL**<br><br><br>*Document Electronically Filed* |

**TO:**   CHIEF JUDGE JEROME B. SIMANDLE AND JUDGES OF
THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

4811-3197-7761, v. 1

**ON NOTICE TO:**

**Thomas V. Hildner, Esq,**
Podvey, Meanor, Catenacci, Hildner, Cocoziello & Chattman, P.C
The Legal Center, One Riverfront Plaza, Suite 800
Newark, New Jersey 07102
*Attorneys for Plaintiff, Eugene B. Williams*

**Ronald C. Hunt, Esq.**
Hunt, Hamlin & Ridley
60 Park Place, #1600
Newark, New Jersey 07102
*Attorneys for Plaintiff Bobbie Jean White*

**David Blee, Esq.**
Faust, Goehtz, Schenker & Blee, LLP
570 W. Mt. Pleasant Avenue
Livingston, NJ 07039
*Attorneys for Defendant K&M Transport, Inc.,*
*Aiga Youssef, Porfirio Farfun*

**William C. Soukas, Esq.**
Nowell Amoroso Klein Bierman, P.A.
155 Polifly Road
Hackensack, New Jersey 07601
*Attorneys for Defendant, The Board of Education of the*
*Bergen County Special Services School District Venture Program*

      **PLEASE TAKE NOTICE** that Attorneys for Defendants Board of Education of Paterson

and the Paterson Public School District (collectively, "District") notice the removal of this action,

pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, et seq., from the Superior Court of New Jersey, Passaic

County, Law Division to the United States District Court for the District of New Jersey, and as

grounds therefore show as follows:

<u>**BASIS FOR REMOVAL**</u>

      1.     On December 24, 2014, Plaintiffs Eugene B. Williams and Bobbie Jean White,

individually and as Administrators *Ad Prosequendum* of the Estate of Onynx C. Williams, deceased,

filed a Summons and Complaint in the Superior Court of New Jersey, Passaic County.  A copy of the Complaint and Summons is attached as **Exhibit A**.

2.        Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and is properly removable under 28 U.S.C. § 1441, as this Court is the district and division embracing the place where the State Court action is pending.

## TIMELINESS OF REMOVAL

3.        The Supreme Court of the United States has affirmatively established that the thirty (30) day period to remove an action to federal court begins to run on the date of proper service of the Summons and Complaint. Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 354 (1999).

4.        Defendants The Board of Education of Paterson and the Paterson Public School District (collectively, the "District") were served on or about January 5, 2015.

5.        Pursuant to 28 U.S.C. § 1446, this Notice of Removal is timely filed since it is being filed within thirty (30) days of service of the District. The District is therefore permitted to file this Notice of Removal.  This action is properly removable under 28 U.S.C. § 1441(c), because the United States District Court has original jurisdiction in this case under 28 U.S.C. § 1331, which provides as follows:

> The district courts shall have original jurisdiction of all civil actions
> arising under the Constitution, laws, or treaties of the United States.

6.        In the Complaint, Plaintiffs allege in part that the District wrongfully engaged in conduct which violated Plaintiff's civil rights under the United States and New Jersey Constitutions, and also violated the Individuals with Disabilities Education Act, 20 U.S.C. §1400, et seq. ("IDEA"), The Rehabilitation Act of 1973 ("The Rehabilitation Act"), 29 U.S.C. §794, the Americans with Disabilities Act ("ADA") and 42 U.S.C. §12101, et seq. See **Exhibit A**, Complaint.

7.      Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

8.      The District Defendants have not previously sought similar relief.

9.      Plaintiff demands a jury trial in its Complaint. See **Exhibit A**, Summons and Complaint.

10.     In compliance with 28 U.S.C. § 1446 a copy of this Notice of Removal is being served on Plaintiffs and filed with the State Court.

11.     The defendants, K&M Transport, Aiga Youssef and Porfirio Farfun consent to this application and the removal of this matter from the Superior Court of New Jersey to the United States District Court for the District of New Jersey, Newark Vicinage.

12.     The defendant The Board of Education of the Bergen County Special Services School District – Venture Program consents to this application and the removal of this matter from the Superior Court of New Jersey to the United States District Court for the District of New Jersey, Newark Vicinage.

13.     The District Defendants expressly reserve their right to raise all defenses and objections to Plaintiffs' claims after the action is removed to this Honorable Court.

4811-3197-7761, v. 1

**WHEREFORE**, the Defendants Board of Education of Paterson and the Paterson Public School District respectfully request this Honorable Court take jurisdiction of this action and issue all necessary orders and process to remove said action to the United States District Court for the District of New Jersey.

Respectfully submitted,

SCARINCI & HOLLENBECK, LLC
Attorneys for Defendants Board of Education of Paterson and Paterson Public School District

By: ___/s/ *Michael A. Cifelli*_____

MICHAEL A. CIFELLI, Esq.

Dated: February 3, 2015

4811-3197-7761, v. 1

## LOCAL CIVIL RULE 11.2 CERTIFICATION

I, Michael A. Cifelli, Esq., counsel for the Defendants Board of Education of Paterson and Paterson Public School District certify that the matter in controversy is not the subject of any other action pending in any court nor any pending arbitration or administrative proceeding.

SCARINCI & HOLLENBECK, LLC

Attorneys for Defendants Board of Education of Paterson and Paterson Public School District

By: _/s/ Michael A. Cifelli_

MICHAEL A. CIFELLI, Esq.

Dated: February 3, 2015

4811-3197-7761, v. 1

## CERTIFICATION OF SERVICE

I hereby certify that on February 3, 2015, I sent for service a copy of this Notice of Removal via Lawyers Service for overnight delivery on:

1.    Michael F. Bevacqua, Jr., Esq.
      Thomas V. Hildner, Esq.
      Podvey, Meanor, Catenacci, Hildner, Cocoziello & Chattman, P.C.
      The Legal Center, One Riverfront Plaza, Suite 800
      Newark, New Jersey 07102
      *Attorneys for Plaintiff Eugene B. Williams*

2.    Ronald C. Hunt, Esq.
      Kenyatta K. Stewart, Esq.
      Hine, Hamlin & Ridley
      Newark, New Jersey 07102
      *Attorneys for Plaintiff Bobbie Jean White*

3.    David Blee, Esq.
      Faust, Goehtz, Schenker & Blee, LLP
      570 W. Mt. Pleasant Avenue
      Livingston, NJ 07039
      *Attorneys for Defendant K&M Transport, Inc.,*
      *Aiga Youssef, Porfirio Farfun, and*
      *The Board of Education of the Bergen County*
      *Special Services School District – Venture Program*

3.    Clerk, Superior Court of New Jersey
      Passaic County Courthouse
      77 Hamilton Street
      Paterson, New Jersey 07505

4.    William C. Soukas, Esq.
      Nowell Amoroso Klein Bierman, P.A.
      155 Polifly Road
      Hackensack, New Jersey 07601
      *Attorneys for Defendant, The Board of Education of the*
      *Bergen County Special Services School District Venture Program*

4811-3197-7761, v. 1

5.      Clerk, United States District Court[1]
         Martin Luther King Building & US Courthouse
         50 Walnut Street
         Room 4015
         Newark, NJ 07101

                                      SCARINCI & HOLLENBECK, LLC
                                      Attorneys for Defendants Board of Education of
                                      Paterson and Paterson Public School District

                            By:   _/s/ Michael A. Cifelli_____
                                      MICHAEL A. CIFELLI, Esq.

Dated: February 3, 2015

---

[1] Pursuant to Local Civil Rule 5.1 (e), the original signed civil cover sheet and four copies of the Notice of Removal will be forwarded to the Clerk of the United States District Court for the District of New Jersey.

4811-3197-7761, v. 1

# EXHIBIT A

Michael F. Bevacqua, Jr., Esq. (NJ Attorney ID # 038462003)
Thomas V. Hildner, Esq. (NJ Attorney ID # 248741969)
PODVEY, MEANOR, CATENACCI
HILDNER, COCOZIELLO & CHATTMAN, P.C.
The Legal Center, One Riverfront Plaza, Suite 800
Newark, New Jersey 02102
Telephone: (973) 623-1000
Attorneys for Plaintiff, Eugene B. Williams

Ronald C. Hunt, Esq. (NJ Attorney ID # 011281985)
Kenyatta K. Stewart, Esq. (NJ Attorney ID # 028502007)
HUNT, HAMLIN & RIDLEY
60 Park Place, #1600
Newark, New Jersey 07102
Telephone: (973) 242-4471
Attorneys for Plaintiff, Bobbie Jean White

| | |
|---|---|
| EUGENE B. WILLIAMS<br>and BOBBIE JEAN WHITE, individually and as<br>ADMINISTRATORS *AD PROSEQUENDUM*<br>of the ESTATE OF ONYNX C. WILLIAMS,<br>DECEASED<br><br>                      Plaintiffs,<br><br>    vs.<br><br>THE BOARD OF EDUCATION OF PATERSON,<br>THE PATERSON PUBLIC SCHOOL DISTRICT,<br>designated collectively as THE PATERSON<br>PUBLIC SCHOOLS; DONNIE W. EVANS, ED.D<br>in his official capacity as superintendent of<br>THE PATERSON PUBLIC SCHOOLS, JENNIE<br>RIVERA, K&M TRANSPORTATON, INC.,<br>AIGA YOUSSEF, PORFIRIO FARFUN,<br>and THE BOARD OF EDUCATION OF THE<br>BERGEN COUNTY SPECIAL SERVICES<br>SCHOOL DISTRICT – VENTURE PROGRAM<br><br>                      Defendants. | SUPERIOR COURT OF NEW JERSEY<br>PASSAIC COUNTY LAW DIVISION<br>DOCKET NO. L 9640-14<br><br>        Civil Action<br><br><br>COMPLAINT, DESIGNATION<br>OF TRIAL COUNSEL AND<br>JURY DEMAND |

Plaintiffs, Eugene B. Williams, residing at 128 Union Avenue, Irvington, New

Jersey and Bobbie Jean White, residing at 152 North 5th Street, Paterson, New Jersey,

individually and as Administrators *Ad Prosequendum* of the Estate of Onynx C. Williams, deceased, through their attorneys, Podvey, Meanor, Catenacci, Hildner, Cocoziello & Chattman, P.C. and Hunt, Hamlin & Ridley, by way of Complaint against the Defendants, say:

## INTRODUCTION

Plaintiffs are asserting claims for monetary damages against the named defendants under the New Jersey wrongful death statute, N.J.S.A. 2A:31-1 *et seq.*; survivorship statute, N.J.S.A. 2A:15-3; §504 of the Rehabilitation Act of 1973 ("The Rehabilitation Act"), 29 U.S.C. §794, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, *et seq.*; Law Against Discrimination, N.J.S.A. §10:5-1 *et seq.*; the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983; and the New Jersey Civil Rights Act, N.J.S.A. §10:6-1 *et seq.*

## THE PARTIES

1.     The Plaintiffs' decedent, Onynx C. Williams ("Onynx"), who resided at 152 North 5th Street, Paterson, New Jersey, died on January 5, 2013. She was born on October 1, 1998 and was fourteen (14) years old on the date of her death. Plaintiffs, Eugene B. Williams and Bobbie Jean White, are the parents of Onynx.

2.     On July 12, 2013, Eugene B. Williams and Bobbie Jean White were appointed as the Administrators *Ad Prosequendum* of Onynx's Estate by the Surrogate of Passaic County. They are in the process of being appointed as general Administrators of the Estate as well.

3.     Plaintiffs bring this action on behalf of the Estate of Onynx C. Williams and on their own behalf.

2

4.     The defendants The Board of Education of Paterson and the Paterson Public School District are hereinafter designated collectively as the Paterson Public Schools ("PPS"). The Paterson Public School District is a comprehensive, community public school district that provides educational services to students from Paterson, New Jersey under the administration of the Paterson Board of Education. Onynx was enrolled as a student in PPS. At all times relevant herein PPS received federal financial assistance.

5.     At all times relevant herein, the defendant, Donnie W. Evans, Ed.D ("Evans"), as Superintendent of the Paterson Public Schools, was the Chief Executive Officer for the Paterson Public School District and was responsible for the leadership and management of all divisions and departments in the school district.

*Admit only that Evans was Superintendent. As to remainder, leave Pl's to their proofs* [handwritten]

6.     K&M Transportation, Inc. ("K&M") is a corporation organized under the laws of the State of New Jersey and is located at 32 Fradkin Street in Wallington, New Jersey. K&M is a private entity that, upon information and belief, receives federal funding. It is primarily engaged in the business of transporting people and its operations affect commerce. At all times relevant herein, K&M was in the business of transporting students enrolled in the Paterson Public Schools pursuant to a Student Transportation Contract (the "STC") covering the period September 2012 to June 2013. In performing its obligations under the STC, K&M was obligated to comply not only with the provisions of the STC, but also with the provisions of the applicable policies and procedures of PPS and federal and state law. PPS is liable for the negligent acts and omissions of K&M, and its agents, servants and employees as alleged herein

*NOT DIRECTED* [handwritten]

7.     At all times relevant herein, pursuant to the STC, K&M transported Onynx from her home in Paterson, New Jersey to the facility of the Defendant Board of Education of the

*NOT DIRECTED* [handwritten]

3

Bergen County Special Services School District - Venture Program ("Venture"), a behavioral

disabilities, out-of-district program located in Hackensack, New Jersey, where she had been

placed by PPS, and from that facility back to her home at the end of each school day.

8.    At all times relevant herein, the Defendant Aiga Youssef ("Youssef"), whose last

known address is 4700 Blue Ridge Court, Wallington, New Jersey, was employed as a bus aide

by K&M Transportation, Inc. and was its actual and/or apparent agent, servant or employee.

K&M is vicariously liable for her negligent acts and omissions as alleged herein.

9.    At all times relevant herein, the Defendant Porfirio Farfun ("Farfun"), whose last

known address is 119 12th Avenue, Paterson, New Jersey, was employed as a bus driver by

K&M and was its actual and/or apparent agent, servant or employee.   K&M is vicariously liable

for his negligent acts and omissions as alleged herein.

10.    At all times relevant herein, the Defendant Jennie Rivera was employed by PPS

and served as the Case Manager for Onynx.   PPS is vicariously liable for her negligent and

improper acts and omissions as alleged herein.

## ALLEGATIONS COMMON TO ALL COUNTS

11.    Onynx was placed in the Venture Program by PPS due to an escalating history of

behavioral difficulties at PPS #18, 7 and 8 and in order to provide her with the special education

services she required and to which she was entitled as a disabled and special needs student.

12.    Her disability category was "emotionally disturbed," and she began attending

Venture on February 27, 2012, following a 10-day psychiatric hospitalization at St. Clare's

Hospital in Denville, New Jersey.

4

13.     Onynx's diagnoses were known to PPS, K&M and Venture and included, but were not limited to, seizure disorder (mixed, including grand mal); static, neurological impairment, manifesting learning difficulties; attention deficit hyperactivity disorder ("ADHD"); impulse control disorder; oppositional and defiant disorder; bipolar disorder; poor anger control; and poor frustration tolerance.    Medications were listed as topiramate (Topamax® - anticonvulsant), ziprasidone (Geodon® - antipsychotic), lisdexamfetamine dimesylate (Vyvanse® - psychostimulant pro drug approved for the treatment of ADHD), and paroxetine (Paxil® - antidepressant).  She was noted to have "unpredictable mood swings through the day" and a tendency to be "impulsive and restless."

14.     On January 2, 2013, Onynx was being transported to her home from Venture in a 2010 Chevrolet minibus owned by K&M and operated by its driver, Porfirio Farfun.  Only one (1) aide, Aida Youssef, was present on the minibus at that time in violation of the STC which required two (2) aides to be present.  Defendants PPS and K&M were responsible for ensuring the safe transport of Onynx and the other students on the minibus.

*Insufficient knowledge Accordingly denied*

15.     In addition to Onynx, there were three (3) other students on the bus, one of whom was a Lyndhurst, New Jersey student.  Under the terms of the STC, the policies and procedures of PPS, and New Jersey State law, K&M was prohibited from commingling students from PPS with students from other school districts, and K&M's transportation of the Lyndhurst student on January 2, 2013 and on occasions prior thereto was, therefore, improper and unauthorized.

*Insufficient knowledge Accordingly denied*

16.     The minibus was off route, traveling south on Riverside Avenue in Rutherford, New Jersey, in order to transport the unauthorized, non-district Lyndhurst student to his home in Lyndhurst.  The unauthorized transportation of the Lyndhurst student by K&M on January 2,

5

2013 and prior thereto unduly extended the duration of Onynx's bus ride from Venture to her home in Paterson.

17.    Onynx became agitated, stood up, moved to the rear of the minibus, opened the emergency door and exited the vehicle while it was in motion, sustaining fatal injuries which ultimately caused her death three (3) days later on January 5, 2013.  Audible and visual alarms were activated simultaneously as soon as the handle on the rear emergency exit door was lifted by Onynx.

18.    Upon information and belief, Defendant Youssef was seated directly behind Onynx.  She observed Onynx stand up, move past her toward the rear of the vehicle, open the emergency exit door, and exit the moving bus.  She negligently failed to take any action to prevent this from occurring.

19.    Defendant Farfun negligently failed to observe Onynx's actions and to prevent Onynx from causing herself to sustain grievous bodily injuries and death.

20.    During the time period from February 27, 2012 to January 2, 2013, PPS, Rivera and K&M knew or should have known, based on their knowledge of Onynx's disorders, impairments and disabilities, information received from Venture, and observations of Onynx's actions and behavior, that her extended ride home from Venture on the small and distinctive minibus caused her extreme emotional distress and severely agitated her.  When anxious, distressed and agitated, Onynx, as a result of her disorders, impairments and disabilities, was a flight risk and engaged in impulsive, uncontrollable and reckless behavior that created an inherently dangerous condition and an unreasonable risk of great harm to her of serious bodily injury or death. PPS, Rivera and K&M knew or should have known that there was an obvious

6

and strong likelihood that grievous, self-inflicted harm would occur to Onynx, a likelihood that was sufficiently apparent that defendants' failure to recognize the need for preventive and remedial action and to otherwise respond adequately to the great and unreasonable risk of harm their acts and omissions created evidenced an absence of any concern and a deliberate, reckless or callous indifference and disregard on their part for her welfare.



21.    By way of example, prior to January 2, 2013 PPS and Rivera had knowledge of the following incidents and took no remedial or responsive actions to protect Onynx:

    (a)    On February 9, 2012, Carlos Alvarez (hereinafter "Alvarez"), Teacher in Charge and Case Manager, Bergen County Special Services – Venture Program, advised Rosann Brizan, Paterson Public Schools, Department of Special Services (hereinafter "Brizan"), that the school bus used to transport the students from Paterson "might be inappropriate" for Onynx because it was "very small."

    (b)    On February 15, 2012, Alvarez sent electronic mail correspondence to Brizan, stating that "[his] clinical team recommends that [Onynx] is transported in a separate school vehicle."

    (c)    On April 25, 2012, Onynx left the school building and began walking in the middle of the road (45 MPH Zone) as vehicles passed. She refused instructions to return to the school, requiring the police to respond and escort her back to the building. Alvarez sent electronic mail correspondence to Jennie Rivera (hereinafter "Rivera"), Case Manager, Paterson Public Schools, on April 25, 2012, advising of this incident.

    (d)    On April 26, 2012, Onynx left the school building, without permission, and upon re-entry, proceeded to destroy the work of other students displayed on a bulletin board and to vandalize the hallway with a red sharpie marker. Alvarez sent electronic mail correspondence to Rivera on April 29, 2012, advising her of this incident.

7

(e)     On May 7, 2012, Onynx requested home instruction and was noted to dislike the bus ride home from school. On May 8, 2012, when a teacher asked Onynx to attend class, she yelled, "get out of my fucking face!" On September 19, 2012, Onynx was agitated and did not want to enter the classroom for math and ran to another classroom. When Onynx ultimately entered the classroom for math, she produced the blade from a pencil sharpener and advised the teacher that she had used it in the past to purposely cut her face. She had trouble focusing in class and advised the teacher that "her brain was all mixed up today."

(f)     On September 20, 2012, at 3:00 p.m., Onynx left the school building without permission, "clearly stating that she had no intention of boarding [the] school van to go home," and proceeded to leave campus, crossing the street without looking for oncoming traffic. Upon her return, Onynx refused to board the school bus to go home, stating the school van was too small and she does not like wearing the seat belt and that kids in the neighborhood make fun of her when she gets off the van in front of her house. Alvarez sent electronic mail correspondence to Rivera on September 20, 2012, advising her of this incident.

(g)     On October 1, 2012, at or near the time of dismissal, Onynx left the school building and walked directly into traffic, causing a car to swerve, brush her clothes and very narrowly avoid hitting her. Onynx was undeterred by the near miss and continued walking across the street directly in front of other oncoming vehicles. Alvarez sent electronic mail correspondence to Rivera on October 4, 2012, advising her of this incident.

(h)     In November of 2012, Rivera received a report from Kerry Callahan, LCSW, Clinical Supervisor, Bergen County Special Services School District – Venture Program, advising that "Onynx has walked out of the building on several occasions this marking period during a crisis. Attempts to process this with her have been made but she has been resistant." On November 20, 2012, Onynx left class without permission. On November 29, 2012, Onynx left the school building without permission.

(i)     On November 30, 2012, at 2:55 p.m., Onynx refused to board the school bus to go home and proceeded to leave the Venture campus without permission.

8

(j)    On December 5, 2012, Alvarez sent electronic mail correspondence to Rivera, advising "[o]ne of the issues that [Onynx] is having difficulty with during dismissal time is the amount of time it takes for her to get home from our school (according to her)" and Venture Program staff "have been experiencing delays in getting her to board the school bus on time which effects your other students and another student who lives much farther away." Alvarez requested that "Onynx be provided separate transportation in order to decrease these incidents of running away from the school building at the end of the school day." PPS, therefore, was aware prior to the incident that K&M was commingling students from different districts in violation of the STC, thereby significantly increasing the duration of Onynx's ride home from school.

(k)    On December 7, 2012, Alvarez sent electronic mail correspondence to Rivera reiterating his request that "Onynx be provided separate transportation in order to decrease these incidents of running away from the school building at the end of the school day."

## FEDERAL STATUTORY AND REGULATORY BACKGROUND REGARDING THE EDUCATION AND TRANSPORTATION OF CHILDREN WITH HANDICAPS AND DISABILITIES

22.    The Individuals with Disabilities Education Act, 20 U.S.C. §1400, et seq., ("IDEA") and the regulations thereunder, 34 C.F.R. §300.1 et seq., require that responsible educational agencies provide disabled children with a "free appropriate public education" ("FAPE"), and extensive due process procedures to effectuate that right. Under IDEA, a school district is required to identify every disabled child in its jurisdiction. 34 C.F.R. §300.111(a).

23.    The statute and regulations establish a comprehensive format through which a child with a disability is evaluated, her classification is determined, and an appropriate

9

program of special education with "related services" (including transportation) is developed and implemented.

24.     The program must be developed jointly by local education agency officials and parents through an Individual Education Program ("IEP").  There are two (2) main parts to the IEP process: (1) the IEP meeting(s), when parents, teachers, school administrators, and related services personnel ("IEP team") define the disabled child's unique needs and make collaborative decisions regarding the required accommodations, supplementary aids and services, and behavioral interventions to be provided in the child's educational program; and (2) completion of the IEP document, which is a written record of the agreed upon special education and related services, supplementary aids, and behavioral interventions to be implemented and the basis therefor.

25.     Section 504 of the Rehabilitation Act prohibits discrimination against handicapped persons in federally funded programs such as public education and requires the identification of all disabled children and the provision of appropriate special educational services and related services such as transportation. 34 C.F.R. §104.1 *et seq.*

26.     Under §504, a "handicapped person" is defined as "any person who has a physical or mental impairment which substantially limits one or more major life activities." 34 C.F.R. §104.3. The term "physical or mental impairment" is defined as "any physiological, mental or psychological disorder." Id.  The term "major life activities" is defined as "functions such as caring for one's self... learning, and working." *Id.*  Onynx was a "handicapped person" within the meaning of the Rehabilitation Act.

10

27.    Under §504, recipients of federal funds are required to "provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap." 34 C.F.R. §104.33(a).    The term "appropriate education" is defined as "the provision of regular or special education and related aids and services that (i) are designed to meet individual educational needs of the handicapped persons as adequately as the needs of nonhandicapped persons are met and (ii) are based on adherence to the procedures that satisfy the requirements of §104.34, 104.35, and 104.36." 34 C.F.R. §104.33(b).

28.    If a child is identified by a school district under IDEA, and the provisions of that Act are fulfilled, the school district's responsibilities under §504 are also fulfilled. However, where a school district fails to conform to IDEA, or where a child is eligible under §504 but not IDEA, a school district must provide the services required by §504. 34 C.F.R. §104.32, *et seq.*

29.    Under §504, educational agencies are required to provide appropriate and safe transportation for students with disabilities.

30.    Under IDEA, transportation is specifically included as a related service. Under IDEA's mandate, districts are required to appropriately evaluate a child's need for transportation services and to provide safe, adequate, and appropriate transportation to meet the child's educational needs.    20 U.S.C. §1401(26); 34 C.F.R. §300.24(a) and (b)(16). Moreover, the regulations under IDEA explicitly include transportation as a "non-academic service" which must be provided as necessary to meet a child's special education needs. 34 C.F.R. §300.107(b).

11

31.    The regulations under §504 require appropriate transportation services to meet the special education needs of a child with disabilities.   34 C.F.R.   §104.33(b) and (c); §104.37(a)(2) (requirement of transportation services) and 34 C.F.R.   §104.35 (requirement of appropriate evaluation for special education and related services).

32.    The IDEA and New Jersey law mandate that local education agencies ("LEA") provide transportation for eligible special education children when required in order for a child to benefit from special education and related services, and define transportation to and from school as a related service under the IDEA (34 C.F.R. §300.34(c)(16)) and the Rehabilitation Act.  As alleged, Onynx had "emotional disturbance" and "other health impairment," as those conditions are defined under the IDEA and New Jersey law, and required special education and specialized transportation services.

33.    Each child who receives special education and related services in a public school or is placed by a LEA in a special education program is required to have an IEP before services are initiated.  Each IEP is designed for one specific child.  The IEP guides the delivery of services for the child, including, but not limited to, all required specialized transportation services.

34.    The IEP, including but not limited to its transportation provisions, must be reviewed at least once annually and at any other times during the year when necessary.

35.    Appropriate, safe and reasonably efficient transportation is essential for disabled children to access special education and related services.  Thus, transportation options and decisions must always be carefully considered and reviewed by the IEP team in order to ensure the safety of the child with disabilities and the other children with whom he or she will ride to

12

and from school. If a child's IEP team determines that supports or modifications are needed in order for the child to be safely transported, the child must receive the necessary transportation and support at no cost to the parents.

36.    All children are unique individuals, and general descriptions of categories of disability do not apply to the same extent to all children falling within a given category. Decisions regarding transportation, therefore, must be made on a case-by-case basis. The IEP team must consider the impact of the child's unique needs on related services, such as student transportation to and from school. This is the beginning point for the development and implementation of accommodations, supplementary aids and services, and behavioral interventions required to ensure that the child receives safe and appropriate transportation.

*NOT DIRECTED*

37.    There are diverse special considerations that transporters of children with disabilities need to consider and address in order to provide safe transportation. It, therefore, is imperative that when specialized transportation services are required, the IEP process be the mechanism for decision-making. Moreover, in determining the child's specialized transportation needs, it is appropriate to have a person with expertise in the transportation of students with disabilities attend the IEP meeting or provide a written recommendation concerning the nature of the accommodations, supplementary aids and services required to safely transport the child, which should be incorporated in the IEP document as part of the evaluation report.

*NOT DIRECTED*

38.    Allowing transporters of children with disabilities to make uninformed, unilateral decisions creates an unreasonable risk of harm. It, therefore, is critical that the IEP team, including transportation personnel, make up-to-date informed decisions regarding the specialized transportation services required for the child with disabilities and how the transportation services

*NOT DIRECTED*

*To the extent ∆ PPS denies the π's[13] allegations of liability contained within para. 38 of π's' complaint. As to the remand of allegations contained w/ para 38, same are not directed at this ∆*

should be implemented. PPS failed to adequately and properly address Onynx's transportation needs during the IEP process and to modify the transportation services provided to her as necessary to ensure that she was transported to and from school in a safe, efficient, and appropriate manner.

39. After decisions about transportation have been made by the IEP team, the terms and conditions of the transportation services to be provided to the child must be put in writing and adequately described in the IEP document. The IEP document must reflect all specialized transportation provisions that the school district has agreed to provide and specifically describe the required services, supplemental aids, and behavioral interventions in the greatest detail possible.

*NOT DIRECTED*

40. Since transporting children with disabilities requires increased knowledge and personnel time spent on managing the unique needs of this school-aged population, it is critical that drivers and transportation aides be well-informed about the individual disabilities and needs of the children that they are responsible to transport safely to and from school. The school district, therefore, must provide transportation personnel with the information necessary to adequately and properly perform their job functions. Upon information and belief, PPS failed to provide K&M with adequate information regarding Onynx's individual disabilities, behavioral characteristics, and special needs. *(Same as para. 38)*

41. Each individual assigned to a special education route must be capable of managing the unique needs of each child and providing the services specified in the child's IEP. Importantly, the type of training provided to drivers and attendants must be dictated by and adequately address the specific needs of the children to be served by them. Without adequate

*NOT DIRECTED*

14

information regarding the individual disabilities, behavioral characteristics, and needs of the children that they are responsible to safely transport, contractors cannot ensure that well-trained, well-informed, capable personnel are assigned to the route. In recognition of this principle, federal and New Jersey state law authorizes the disclosure of student information and records to school bus drivers and aides without parental consent.

**FIRST COUNT**
**Wrongful Death of Onynx**
**(N.J.S.A. 2A:31-1 et seq.)**

*R & R*

42.    Plaintiffs incorporate by reference all the facts and allegations contained in paragraphs 1 through 41 of this Complaint as if fully set forth herein.

43.    There is, and at the time of the events set forth herein there was, in force and

*NOT DIRECTED*

effect in the State of New Jersey a wrongful death statute known and designated at N.J.S.A. 2A:31-1 et. seq. Plaintiffs, Eugene B. Williams and Bobbie Jean White, individually and as Administrators *Ad Prosequendum* of the Estate of Onynx C. Williams, bring this action pursuant to the provisions thereof for the benefit of the next of kin of the decedent.

*NOT DIRECTED*

44.    This action is commenced within two years of the happening of the death of the decedent. *INSUFF knowl. leave Ths to their proofs*

*Denied*

45.    PPS was negligent and/or reckless, and failed to meet its obligations under applicable New Jersey and federal law and established Paterson Board of Education policy to transport Onynx safely and efficiently to and from The Venture Program. Specifically, the Paterson Public Schools and/or its employee Jennie Rivera negligently and/or recklessly failed, *inter alia,* to:

15

(a) adequately and properly assess, address, review and modify as necessary via the IEP process Onynx's unique transportation needs, including but not limited to the need to provide her with separate, appropriate and safe transportation;

(b) provide the specialized services, supplemental aids, and behavioral interventions necessary to transport Onynx safely and expeditiously to and from school, including but not limited to providing her with separate transportation and insuring that a well-informed, adequately and properly trained, one-on-one transportation aide was assigned to Onynx and present on the bus each day to monitor her conduct, assist her as necessary while she was being transported to and from the Venture facility, and protect her from harm;

(c) investigate and determine before entering into the STC with K&M whether K&M could adequately, safely and properly perform its obligations under the STC;

(d) provide K&M with adequate and timely information regarding Onynx's individual disabilities, behavioral characteristics, and unique needs required to transport her safely to and from school when they knew or should have known that their failure to provide this information would likely result in the minibus being operated in a manner involving unreasonable risk of grievous bodily harm to Onynx;

(e) adequately and properly monitor K&M's performance of and compliance with the Student Transportation Contract, Board of Education policies and procedures, and generally accepted safety standards in the field of transportation of students with disabilities.

The egregious violations by PPS and Rivera, as alleged above, manifested an intentional or reckless disregard of and a deliberate indifference to known or obvious risks to Onynx's safety, were palpably unreasonable and were a substantial contributing cause of the tragic incident that resulted in her death.

46.   Venture was negligent in that, *inter alia*, it failed to provide PPS, K&M and the plaintiffs with adequate information in a timely and effective manner regarding Onynx's disabilities, disorders, adjustment problems, complaints, conduct, behavior and behavioral

16

characteristics while she was attending Venture so that PPS, K&M and the plaintiffs could take

action to ensure that Onynx was transported to and from Venture in an appropriate, efficient and

safe manner.

  47. K&M was negligent in that, *inter alia*, it:

   (a) Improperly commingled students from Paterson and Lyndhurst who
    were contracted to ride separately, on and before January 2, 2013,
    thereby substantially extending Onynx's already significant travel time
    from Venture to her home and precipitating Onynx's actions on
    January 2, 2013 which lead to her sustaining grievous injury and
    death;

   (b) Failed to provide an adequate, well-informed, well-trained, competent
    and capable bus driver and two (2) transportation aides for the Venture
    routes as required; and

   (c) Employed a bus driver and aide, *i.e.*, defendants Farfun and Youseff
    respectively, who negligently failed to make proper observations,
    maintain order on the school bus and take timely, adequate and proper
    actions to prevent harm to Onynx.

  48. As alleged in paragraph 18 supra, upon information and belief, defendant Youssef

was seated directly behind Onynx. She observed Onynx move past her toward the rear of the

vehicle, open the emergency exit door, and exit the moving bus. Youssef negligently failed to

take any action to prevent this from occurring.

  49. As alleged in paragraph 19 supra, defendant Farfun negligently failed to observe

Onynx's actions and to prevent Onynx from causing herself to sustain grievous bodily injuries

and death.

  50. K&M is vicariously liable for the negligent acts and omissions of defendants

Farfun and Youssef alleged herein.

51. The STC constituted a delegation by PPS to K&M of it non-delegable statutory duty to provide adequate, safe and efficient transportation for Onynx to and from the Venture facility, and PPS is therefore vicariously liable for the negligent acts and omissions of K&M, and its agents, servants and employees as alleged herein.

*Denied*

52. K&M falsely represented to PPS that it had the intent, means and methods to comply fully with the provisions of the STC and the applicable provisions of the policies and procedures of PPS and federal and state law, and PPS relied on those false representations.

*NOT DIRECTED*

53. K&M knew that its representations were materially false when it made them and K&M made them with the intent to deceive PPS and conceal that it would not transport the PPS students to and from Venture in a safe and efficient manner.

*NOT DIRECTED*

54. K&M thus fraudulently induced PPS to enter into the STC.

*NOT DIRECTED*

55. As a result of the fraud of K&M, Onynx was caused to sustain grievous injuries and death.

*NOT DIRECTED*

56. The risk of severe bodily injury to Onynx during K&M's transportation of her to her home from Venture as a result of her disabilities was obvious to and/or readily foreseeable by the defendants, and her injuries and death were preventable by the defendants.

*Denied: as to PPS*

57. As a direct and proximate result of the negligence and breach of duty by the defendants, jointly and severally, Onynx Williams was caused to die.

*Denied as to PPS*

58. The Estate of the decedent incurred hospital, medical, funeral and burial expenses and charges for the decedent.

*insuff't knwl.*

59. The decedent, Onynx Williams, left surviving her mother, Bobbie Jean White, and her father, Eugene B. Williams, at the time of her demise, and by reason of the negligent acts

*insuff't knwl.*

18

and omissions and breach of duty of the defendants PPS, Rivera, K&M Transportation, Inc., Aiga Youssef, Porfirio Farfun and Venture, jointly and severally, which caused Onynx's death, decedent's survivors have suffered pecuniary losses including, but not limited to, loss of services and loss of companionship and association with their daughter.

WHEREFORE, the plaintiffs, Eugene B. Williams and Bobbie Jean White, individually and as Administrators *Ad Prosequendum* of the Estate of Onynx Williams, demand judgment against the defendants, The Board of Education of Paterson, the Paterson Public School District, designated collectively as the Paterson Public Schools, Jennie Rivera, K&M Transportation, Inc., Aiga Youssef, Porfirio Farfun and the Bergen County Special Services School District – Venture Program, jointly and severally, for compensatory damages, and punitive damages against K&M Transportation, Inc., together with interest, costs of suit and attorney's fees.

### SECOND COUNT
### Survivorship Action
### (N.J.S.A. 2A:15-3)

60.   Plaintiffs incorporate by reference all of the facts and allegations set forth in paragraphs 1 through 59 of this Complaint as if fully set forth herein.

61.   As a direct and proximate result of the negligence and breach of duty of the defendants, the plaintiffs' decedent was caused, *inter alia,* to sustain great pain, suffering and disability, extreme emotional distress, pre-impact terror, loss of income, and the loss of enjoyment of life, and plaintiffs are entitled to recover damages therefor, including, but not limited to, all reasonable medical, funeral and burial expenses, pursuant to N.J.S.A. 2A:15-3.

19

*[handwritten: WHEREFORE]*

WHEREFORE, the plaintiffs, Eugene Williams and Bobbie Jean White, individually

and as Administrators and Administrators *Ad Prosequendum* of the Estate of Onynx Williams,

demand judgment against the defendants The Board of Education of Paterson, the Paterson

Public School District, designated collectively as the Paterson Public Schools, Jennie Rivera,

K&M Transportation, Inc., Aiga Youssef, Porfirio Farfun and the Bergen County Special

Services School District – Venture Program, jointly and severally, for compensatory damages,

and punitive damages against K&M Transportation, Inc., together with interest, costs of suit and

attorney's fees.

### THIRD COUNT
### Violation of §504 of The Rehabilitation Act
### (29 U.S.C. §794)

*[handwritten: f & f]*

62.     Plaintiffs hereby incorporate by reference all the facts and allegations set forth in

paragraphs 1 through 61 of this Complaint as if fully set forth herein.

*[handwritten: NOT DIRECTED]*

63.     Onynx was disabled as defined by the Rehabilitation Act, 29 U.S.C. §794(a); 34

C.F.R. §104, *et seq.*

*[handwritten: NOT DIRECTED]*

64.     Onynx was "otherwise qualified to participate in school activities" as defined by

the Rehabilitation Act, 29 U.S.C. §794(a); 34 C.F.R. Section 104, *et seq.*

*[handwritten: Denied]*

65.     Defendant PPS, while acting under color of state law, violated and knew or

should have known that it had violated the rights of plaintiffs and the decedent arising under

§504 of the Rehabilitation Act of 1973, 29 U.S.C. §794(a), and the regulations thereunder in an

outrageous, intentional, callous or deliberately indifferent manner.  PPS failed, *inter alia,* to

conduct an appropriate and comprehensive evaluation of Onynx's transportation needs and failed

to properly plan for, coordinate, and provide Onynx with a proper, safe, and free appropriate public education, special education, related services, specialized transportation, travel training, and all entitlements required by the Rehabilitation Act, including but not limited to safe, proper, and appropriate transportation to and from school conducive to her needs, and proper and safe accommodations for Onynx's handicaps and disabilities, despite directives in her IEP and the information PPS received in communications from Venture regarding the behavioral and adjustment problems she was experiencing.   PPS thus failed to protect Onynx from harm as required and excluded her from participation in, denied her the benefits of, and subjected Onynx to discrimination under the early intervention services and related educational services program provided by PPS to Onynx by virtue of her handicaps and disabilities.

*Denied*

66.     The facts as set forth in full herein demonstrate that PPS acted intentionally or with deliberate and callous indifference as to Onynx's rights as a disabled student.  Specifically, PPS knowingly failed to make reasonable and safe accommodations for Onynx's handicaps and disabilities, despite directives set forth in her IEP and the communications from Venture regarding her adjustment problems, complaints, conduct, and the behavioral problems she was experiencing, by failing to provide her with an appropriate, alternative mode of transportation and a designated transportation aide.

*Denied*

67.     In addition to or in the alternative, the facts as set forth in full herein demonstrate that PPS acted with gross misjudgment and deliberate indifference as to the education and provision of services to disabled students in Paterson, including Oynx.  The conduct by PPS

21

and Rivera was professionally unjustifiable and constitutes a pattern of refusing to make reasonable accommodations available to disabled students, including Onynx Williams.



68.    PPS intentionally or through its deliberate indifference violated Oynyx's rights arising under the Rehabilitation Act in a discriminatory manner by failing to conduct an appropriate evaluation of Oynyx's transportation needs, failing to properly plan for, coordinate, communicate, and disseminate her special needs and provide Oynyx with a proper, safe, and free appropriate public education, special education, related services, specialized transportation equipment, assistive technology devices and services, travel training, and all entitlements provided by the Rehabilitation Act, including but not limited to safe, proper, and appropriate transportation to and from school.  PPS failed to properly and safely accommodate Oynyx's disabilities.  PPS thus intentionally or through its deliberate indifference excluded Oynyx's from participation in, denied her the benefits of, and subjected her to discrimination under the programs provided to her by PPS by virtue of her disabilities.

69.    Despite the fact that reasonable and effective accommodations such as providing Onynx with separate transportation in an appropriate vehicle and designating a one-on-one transportation aide to monitor her conduct and assist her as necessary were readily available and fully known to PPS and Rivera, defendants favored a practice of ignoring these accommodations when they knew or should have known that doing so would result in the outcome of causing Oynyx to act in an impulsive manner that could cause her to sustain grievous injuries and death.

70.    It was solely because of her disability that PPS and Rivera denied Onynx her right to receive those reasonable accommodations despite directives set forth in her IEP and numerous

22

communications from Venture regarding Onynx's disabilities, disorders, complaints, behavior and behavioral characteristics. Onynx was therefore placed at a great and unreasonable risk of severe bodily harm while under the care and supervision of PPS and Rivera as a result of their failure to take the actions necessary to protect her.

71.     PPS's policies, practices, and customs, particularly the actions and omissions described hereinabove, violated Oynyx's rights under §504 of the Rehabilitation Act by intentionally or through deliberate indifference discriminating against her on the basis of her disability and by denying her participation in and the benefit of the Venture program.

*Denied*

72.     PPS denied Oynyx services it made available to non-disabled students, including safe and appropriate transportation services.

*Denied*

73.     The actions of K&M unlawfully deprived Onynx of the benefits of the transportation services provided to her by PPS in that K&M:

*NOT Directed*

(a) Improperly commingled students from Paterson and Lyndhurst who were contracted to ride separately, on and before January 2, 2013, thereby substantially extending Onynx's already significant travel time from Venture to her home and precipitating Onynx's actions on January 2, 2013 which lead to her sustaining grievous injury and death;

(b) Failed to provide an adequate, well-informed, well-trained, competent and capable bus driver and two (2) transportation aides for the Venture routes as required; and

(c) Employed a bus driver and aide, *i.e.*, defendants Farfun and Youseff respectively, who negligently failed to make proper observations, maintain order on the school bus and take timely, adequate and proper actions to prevent harm to Onynx.

74.    The injuries sustained by Onynx on January 2, 2013, which ultimately caused her untimely death on January 5, 2013, and the resulting damages and losses to Onynx's next-of-kin and plaintiffs individually are a direct and proximate result of defendant PPS's outrageous, intentional, and improper violations of the rights of Onynx and the plaintiffs, or of its deliberate indifference to those rights, arising under §504 of the Rehabilitation Act of 1973, 29 U.S.C. §794(a), and the regulations thereunder.  PPS's conduct also substantially increased the risk of harm to Onynx and the plaintiffs.

WHEREFORE, the plaintiffs, Eugene Williams and Bobbie Jean White, individually and as Administrators and Administrators *Ad Prosequendum* of the Estate of Onynx Williams, demand judgment against the defendants The Board of Education of Paterson, the Paterson Public School District, designated collectively as the Paterson Public Schools, and K&M Transportation, Inc. for compensatory damages, together with interest, costs of suit and attorney's fees.

## FOURTH COUNT
### The Americans with Disabilities Act
(42 U.S.C. §12101, *et seq.*)

75.    Plaintiffs hereby incorporate by reference all the facts and allegations contained in paragraphs 1 through 74 of this Complaint as if fully set forth herein at length.

76.    At all relevant times herein, PPS knew that Onynx was a "qualified individual with a disability" as defined by the ADA, 42 U.S.C. §12131, *et seq.*

77.    Defendant, PPS, while acting under color of state law, violated and knew or should have known that it had violated Onynx's and the plaintiffs' rights arising under the ADA

24

in an outrageous, intentional, or deliberately indifferent manner. PPS failed to conduct an appropriate evaluation of Onynx's transportation needs, failed to properly plan for, coordinate and provide Onynx with a proper, safe, and free appropriate public education, special education, related services, travel training, and all entitlements provided by the ADA, including but not limited to safe, proper, and appropriate transportation to and from school conducive to her needs, and deliberately failed to properly and safely accommodate Onynx's handicaps and disabilities by failing to provide her with an appropriate alternative mode of transportation and a designated transportation aide. PPS thus failed to protect Onynx and excluded her from participation in, denied her the benefits of, and subjected Onynx to discrimination under the early intervention services and related educational services program provided to her by PPS by virtue of her handicaps and disabilities. The exclusion, denial and discrimination by PPS were intentional or were the result of its deliberate indifference, thereby entitling the plaintiffs to an award of damages.

78.     The injuries sustained by Onynx on January 2, 2013, which ultimately caused her untimely death on January 5, 2013, and the resulting damages and losses suffered by Onynx's next-of-kin and plaintiffs individually are a direct and proximate result of the outrageous and intentional exclusion, discrimination and violations by PPS of decedent's and plaintiffs' rights or their deliberate indifference to those rights arising under the ADA as alleged herein. The conduct of PPS also substantially increased the risk of great harm to Onynx and the plaintiffs.

*Denied*

*Wherefore...*

**WHEREFORE**, the plaintiffs, Eugene Williams and Bobbie Jean White, individually and as Administrators and Administrators *Ad Prosequendum* of the Estate of Onynx Williams,

25

demand judgment against the defendants The Board of Education of Paterson and the Paterson

Public School District, designated collectively as the Paterson Public Schools, for compensatory

damages, together with interest, costs of suit and attorney's fees.

**FIFTH COUNT**
**(Law Against Discrimination, N.J.S.A. 10:5-1 et seq.)**

*R & R*

79.     Plaintiffs hereby incorporate by reference all the facts and allegations set forth in

paragraphs 1 through 78 of this Complaint as if fully set forth herein.

*Denied as to PPS & Rivera*

80.     The acts and omissions of PPS, Rivera and K&M constituted unlawful

discrimination against Onynx on the basis of her disabilities and handicaps and/or a failure to

accommodate her disabilities and handicaps in violation of the Law Against Discrimination.

*Denied*

81.     Specifically, *inter alia*, PPS and Rivera intentionally or as a result of their

deliberate indifference failed to:

(a) adequately and properly assess, address, review and modify as
necessary via the IEP process Onynx's unique transportation needs,
including but not limited to providing her with separate appropriate
and safe transportation;

(b) provide the specialized services, supplemental aids, and behavioral
interventions necessary to transport Onynx safely and expeditiously to
and from school, including but not limited to providing her with
separate transportation and insuring that a well-informed, adequately
and properly trained, one-on-one transportation aide was assigned to
Onynx and present on the bus each day to monitor her conduct, assist
her as necessary while she was being transported to and from the
Venture facility, and protect her from harm;

(c) investigate and determine before entering into the STC with K&M
whether K&M could adequately, safely and properly perform its
obligations under the STC;

26

(d) provide K&M with adequate and timely information, regarding Onynx's individual disabilities, behavioral characteristics, and unique needs, required to transport her safely to and from school when they knew or should have known that their failure to provide this information would likely result in the minibus being operated in a manner involving unreasonable risk of grievous bodily harm to Onynx; and

(e) adequately and properly monitor K&M's performance of and compliance with the Student Transportation Contract, Board of Education policies and procedures, and generally accepted safety standards in the field of transportation of students with disabilities.

*NOT DIRECTED*

82. Specifically, *inter alia*, K&M intentionally or as a result of its deliberate indifference to Onynx's rights and safety:

(a) Improperly commingled students from Paterson and Lyndhurst who were contracted to ride separately, on and before January 2, 2013, thereby substantially extending Onynx's already significant travel time from Venture to her home and precipitating Onynx's actions on January 2, 2013 which lead to her sustaining grievous injury and death;

(b) Failed to provide an adequate, well-informed, well-trained, competent and capable bus driver and two (2) transportation aides for the Venture routes as required; and

(c) Employed a bus driver and aide, *i.e.*, defendants Farfun and Youseff respectively, who negligently failed to make proper observations, maintain order on the school bus and take timely, adequate and proper actions to prevent harm to Onynx.

*Denied as to Dr PPS & Rivera*

83. The violations of the Law Against Discrimination by PPS, Rivera, and K&M as alleged were a substantial contributing cause of the tragic incident that resulted in Onynx's grievous injuries and death and the damages resulting therefrom.

*Wherefore*

**WHEREFORE**, the plaintiffs, Eugene Williams and Bobbie Jean White, individually and as Administrators and Administrators *Ad Prosequendum* of the Estate of Onynx Williams,

27

demand judgment against the defendants, The Board of Education of Paterson, the Paterson Public School District, designated collectively as the Paterson Public Schools, Jennie Rivera and K&M Transportation, Inc. for compensatory damages, together with interest, costs of suit and attorney's fees.

## SIXTH COUNT
### (42 U.S.C. §1983 *et seq.*)

84.     Plaintiffs hereby incorporate by reference all the facts and allegations set forth in paragraphs 1 through 83 of this Complaint as if fully set forth herein.

85.     At all times material hereto, PPS, Evans and Rivera, while in concert and under color of state law, employed a pattern, practice and custom of failing to ensure the safety and well-being of disabled students, including but not limited to the safe and appropriate transportation of these students as set forth herein.  Specifically, they failed to implement adequate rules, procedures and/or protocols to protect the safety of disabled and special education students, such as Onynx, during their transportation to and from school and disregarded the foreseeable harm resulting from their failure to implement and adhere to proper safety rules, procedures and protocols.

86.     At all times material hereto, PPS and Evans acted with deliberate indifference with respect to their pattern, practice and custom of failing to properly inform and train PPS's agents, including but not limited to Jennie Rivera, K&M and defendants Farfun and Youssef, on how to provide the safe and appropriate transportation described herein.  It was the pattern, practice and custom of PPS and Evans to knowingly allow unprofessional and harmful treatment of disabled students by unqualified, untrained and unsupported agents.

*Denied*

87.   The facts as set forth in full herein demonstrate that the PPS, Evans and Rivera acted with deliberate indifference to Onynx's rights as a disabled student in Paterson, New Jersey.  PPS, Evans and Rivera knowingly failed to make reasonable accommodations for Oynyx despite directives set forth in her IEP and reports by Venture personnel to PPS describing the effects of Oynyx's disabilities, disorders and impairments on her behavior.

*Denied*

88.   Prior to and on January 2, 2013, PPS, while acting under color of state law, entered into a special relationship with Oynyx, and created foreseeable dangers and an unreasonable risk of great harm to Onynx which directly and proximately caused Oynyx's death and the damages, injuries, and losses to Onynx set forth herein.  PPS thereby assumed affirmative substantive due process duties, including but not limited to the duties to provide proper and safe school bus transportation to Oynyx and to protect her health, safety, and welfare.

*Denied*

89.   The special relationship that PPS entered into with Oynyx arose from PPS and Rivera's having placed Oynyx on a school bus during her drive home from school on which she was left without reasonable means of protection, thus triggering the due process protections of the Fourteenth Amendment to the United States Constitution.

*Denied*

90.   The rights of Onynx and the plaintiffs under IDEA, the Rehabilitation Act, and the ADA are federal and state entitlements and involve property and liberty interests which were abridged, withdrawn, limited or denied without due process of law in violation of the Fourteenth Amendment of the United States Constitution, 42 U.S.C. §1983.

*Denied*

91.   PPS, Evans and Rivera, while acting in concert and under color of state law, and with deliberate indifference, violated Oynyx's rights to substantive due process, including but not limited to the right to life; the right to freedom from physical harm and death; the right to

29

safe and proper school bus transportation; the liberty interest in protecting Oynyx from a dangerous environment and state created dangers; the liberty interest in protecting and preserving the life and safety of Oynyx from deprivations caused by state action; the liberty interest in protecting Oynyx's personal bodily integrity; the liberty interest in providing Oynyx with a reasonable means of self-protection; and the liberty interest in protecting Oynyx's health, safety, and welfare, thus subjecting Oynyx to discrimination by virtue of her disabilities.

92.    PPS, Evans and Rivera, while acting in concert and under color of state law, and with deliberate indifference, violated Oynyx's rights to substantive due process and caused the damages sustained by her and by the plaintiffs as alleged herein by their knowing failure to make reasonable accommodations for Oynyx despite directives set forth in her IEP and numerous communications by Venture personnel regarding her disabilities, impairments and behavior.

WHEREFORE, the plaintiffs, Eugene Williams and Bobbie Jean White, individually and as Administrators and Administrators *Ad Prosequendum* of the Estate of Onynx Williams, demand judgment against the defendants, The Board of Education of Paterson, the Paterson Public School District, designated collectively as the Paterson Public Schools, Donnie W. Evans, Ed.D and Jennie Rivera for compensatory and punitive damages, together with interest, costs of suit and attorney's fees.

**SEVENTH COUNT**
**N.J. Civil Rights Act**
**(N.J.S.A. 10:6-1 *et seq.*)**

93.    Plaintiffs hereby incorporate by reference all the facts and allegations set forth in paragraphs 1 through 92 of this Complaint as if fully set forth herein.

*Denied*

94.     The acts and omissions of PPS, Evans and Rivera while acting in concert and under color of state law deprived Onynx of her substantive due process or equal protection rights and privileges secured by the laws and constitutions of the United States and of the State of New Jersey as alleged in Counts Three, Four, Five and Six of this Complaint.

*Denied*

95.     Specifically, PPS, Evans and Rivera intentionally or as a result of their deliberate indifference failed to provide appropriate, safe and efficient transportation for Onynx as required by federal and state law and discriminated against her in that, *inter alia*, they:

(a) failed to implement adequate rules, procedures and/or protocols to protect the safety of disabled and special education students, such as Onynx, during their transportation to and from school;

(b) failed to adequately and properly assess, address, and review as necessary via the IEP process Onynx's unique transportation needs, including but not limited to providing her with separate appropriate and safe transportation;

(c) failed to provide the specialized services, accommodations, supplemental aids, and behavioral interventions necessary to transport Onynx safely and expeditiously to and from school, including but not limited to separate transportation and insuring that a transportation aide was designated to monitor Onynx's conduct and assist her as necessary while she was being transported to and from the Venture facility;

(d) failed to provide K&M with adequate information regarding Onynx's individual disabilities, behavioral characteristics, and unique needs required to transport her safely to and from school; and

(e) failed to adequately and properly monitor K&M's performance of and compliance with the Student Transportation Contract, Board of Education policies and procedures, and generally accepted safety standards in the field of transportation of students with disabilities.

31

*Denied*

*Wherefuee*

96.     The deprivation by PPS, Evans and Rivera of Onynx's substantive due process or equal protection rights was a substantial contributing cause of the tragic incident that resulted in her grievous injuries and death.

**WHEREFORE,** the plaintiffs, Eugene Williams and Bobbie Jean White, individually and as Administrators and Administrators *Ad Prosequendum* of the Estate of Onynx Williams, demand judgment against the defendants The Board of Education of Paterson, the Paterson Public Schools District , designated collectively as the Paterson Public Schools, Donnie W. Evans, Ed.D and Jennie Rivera for compensatory and punitive damages, together with interest, costs of suit and attorney's fees.

## JURY DEMAND

Plaintiffs demand a trial by jury as to all issues in the within action.

Gomez

CROSS-CLAIMS (GET FROM ~~Brythen~~)

AFFIRMATIVE DEFENSE (GET FROM Grayman)

32

## DESIGNATION OF TRIAL COUNSEL

Plaintiffs hereby designate Michael F. Bevacqua, Jr., Esq. and Ronald C. Hunt, Esq., as their trial counsel pursuant to R. 4:25-4.

**PODVEY, MEANOR, CATENACCI, HILDNER, COCOZIELLO & CHATTMAN, P.C.**
Attorneys for Plaintiff, Eugene B. Williams

By: _____
MICHAEL F. BEVACQUA, JR.
NJ Attorney ID#038462003

Dated: December 22, 2014

**HUNT, HAMLIN & RIDLEY**
Attorneys for Plaintiff, Bobbie Jean White

By: _____
RONALD C. HUNT
NJ Attorney ID#011281985

Dated: December 22, 2014

33

## CERTIFICATION

We hereby certify, pursuant to *R.* 4:5-1(b)(2), that to our knowledge and based upon the information available to us at this time, the matter in controversy is not the subject of any other action pending in any court or of pending arbitration proceedings, nor is any other court or arbitration proceeding contemplated.  We hereby certify that to our knowledge and based upon the information available to us at this time, no additional parties should be joined in the action.

We further certify, pursuant to *R.* 4:5-1(b)(3), that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *R.* 1:38-7(b).

MICHAEL F. BEVACQUA, JR.
NJ Attorney ID#038462003
**PODVEY, MEANOR, CATENACCI,**
**HILDNER, COCOZIELLO & CHATTMAN,**
**P.C.**
Attorneys for Plaintiff, Eugene B. Williams
The Legal Center, One Riverfront Plaza, Suite 800
Newark, New Jersey 07102-5497
Telephone: (973) 623-1000

Dated: December 22, 2014

Ronald C. Hunt
NJ Attorney ID # 011281985
**HUNT, HAMLIN & RIDLEY**
Attorneys for Plaintiff, Bobbie Jean White
60 Park Place, #1600
Newark, New Jersey 07102
Telephone:  (973) 242-4471

Dated: December 22, 2014

464723

34