UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EUGENE B. WILLIAMS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE BOARD OF EDUCATION OF PATERSON, et al., <br><br> Defendants. | Civ. No. 15-0765 (KM) <br><br> OPINION |

### KEVIN MCNULTY, U.S.D.J.:

The plaintiffs, Eugene B. Williams and Bobbie Jean White (the "Parents"), bring this action on behalf of their deceased daughter, Onynx C. Williams, who was a special needs student in the Paterson Public School system. Onynx was classified as "emotionally disturbed," with multiple diagnoses, and was placed in the Bergen County Special Services School ("BCSSS") Venture Program ("Venture"), a special out-of-district program located in Hackensack. She was regularly bused from her Paterson home to Venture. On January 2, 2013, Onynx became agitated, opened the emergency door of the moving minibus, and exited from the bus, sustaining fatal injuries. The Complaint names as defendants the Paterson Board of Education, the School District, the Superintendent of Schools, and Onynx's case manager (collectively, "PPS"); the bus company, K&M Transportation, Inc., the driver, and an aide; and, most relevantly here, the Board of Education of BCSSS.[1]

---

[1] According to the Answer (ECF no. 4), the proper name of this defendant is the Board of Education of the Bergen County Special Services School. For clarity, I will refer to this defendant as "BCSSS", and will refer to the out-of-district program itself as "Venture".

1

This matter comes before the Court on the motion of BCSSS to dismiss the original Complaint for lack of jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), and for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). (ECF no. 37) The Parents opposed that motion and cross-moved to amend the Complaint—specifically, to amend paragraph 46. (ECF no. 41)

Here is paragraph 46 as it appears in the original Complaint:

> 46. [BCSSS] was negligent in that *inter alia,* it failed to provide PPS, K&M and the plaintiffs with adequate information in a timely and effective manner regarding Onynx's disabilities, disorders, adjustment problems, complaints, conduct, behavior and behavioral characteristics while she was attending Venture so that PPS, K&M and the plaintiffs could take action to ensure that Onyx was transported to and from Venture in an appropriate, efficient and safe manner.

And here is paragraph 46 as it appears in the proposed Amended Complaint (ECF no. 41-2):

> 46. [BCSSS], acting through Carlos Alvarez, its Teacher in Charge and Case Manager for Onynx, and its other agents, servants and employees whose identity is presently unknown, was negligent in that, inter alia, it failed to provide PPS, K&M and the plaintiffs with adequate, detailed information in a complete, timely and effective manner regarding Onynx's disabilities, disorders, adjustment problems, emotional distress, complaints, self-destructive conduct, behavior and behavioral characteristics, as described herein and as manifested, inter alia, in the significant and alarming incidents and events described in paragraph 21(a) through (k), which occurred while she was attending Venture, so that PPS, K&M and the plaintiffs could take timely and effective action to ensure that Onynx was transported to and from Venture in an appropriate and safe manner as quickly as possible. From at least May 2012, [BCSSS], acting through Alvarez and its other agents, servants and employees, was aware that Onynx felt stigmatized by and disliked the small and distinctive minibus used to transport her and, beginning in October 2012, that K&M was unlawfully commingling a Lyndhurst, New Jersey student attending Venture with the PPS students on Onynx's bus and that this commingling significantly extended the amount of time Onynx

had to spend on the bus. [BCSSS], through Alvarez and its other agents, servants and employees, was aware of the perceived stigma and that the extended travel time caused Onynx great emotional distress, and that when Onynx was agitated, distressed, frustrated or otherwise in crisis, she was a high flight risk and likely to engage in risky behavior, which endangered her health, safety and welfare as described herein and in paragraph 20 above. Nevertheless, [BCSSS], acting through Alvarez and its agents, servants and employees, failed to take remedial action by, inter alia, adequately communicating these very significant facts to PPS, K&M and Plaintiffs, as it was legally obligated to do in order to protect Onynx. In reckless disregard of Onynx's health, safety and welfare, [BCSSS], through Alvarez and its agents, servants and employees, continued to place her on the bus when it was readily foreseeable that she would attempt to escape the bus or otherwise injure herself because of the severe emotional distress riding the minibus caused her and known that she required an alternate form of transportation, such as separate transportation, and/or other specialized transportation services and accommodations that would relieve her distress and protect her health, safety and welfare. The acts and omissions of Alvarez and the other agents, servants and employees of [BCSSS] described herein were palpably and objectively unreasonable and demonstrate reckless indifference to Onynx's health, welfare and safety. [BCSSS] is vicariously liable for the negligent and palpably unreasonable acts and omissions of Carlos Alvarez, and of its other agents, servants and employees, all of whom were legally responsible for Onynx's care, welfare, education and safety.

The Complaint, whether in original or amended form, contains seven Causes of Action under state and federal law. BCSSS is named, along with the other defendants, in Count One (wrongful death, N.J. Stat. Ann. § 2A:31-1) and Count Two (survivorship action, N.J. Stat. Ann. § 2A:15-3). The other causes of action, asserted against the other defendants, but not against BCSSS, are: Count Three (Rehabilitation Act § 504, 29 U.S.C. § 794); Count Four (Americans with Disabilities Act, 42 U.S.C. § 12101); Count Five (NJ Law against Discrimination, N.J. Stat. Ann. § 10:5-1); Count Six (federal Civil Rights Act, 42 U.S.C. § 1983); and Count Seven (N.J. Civil Rights Act, N.J. Stat. Ann. § 10:6-1).

3

## I. ANALYSIS

### A. Applicable Standards

Under Fed. R. Civ. P. 15(a)(2), a court should give leave for a plaintiff to amend the complaint pleading "when justice so requires." The Court may deny a motion to amend the pleadings where there is: (1) undue delay, (2) bad faith or dilatory motive, (3) undue prejudice, (4) futility of amendment, or (5) repeated failure to correct deficiencies. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004). "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or immediately subject to summary judgment for the defendant." *Am. Corporate Soc'y v. Valley Forge Ins. Co.*, 424 F. App'x 86, 90 (3d Cir. 2011) (internal citations omitted). An amended complaint is futile if it could not surmount the standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Housing Assocs., LLC v. Huntington Nat. Bank*,

4

712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

### B. Motion to Amend Complaint (¶ 46)

Confronted with BCSSS's motion to dismiss the Complaint for failure to state a claim (or failure to state a claim over which the court possesses jurisdiction), the Parents cross-moved to amend the Complaint. In particular, they sought to amend and expand ¶ 46 of the Complaint, and attached a proposed amended version of the Complaint to their papers. (ECF no. 41-2)

I briefly consider four of the five factors identified in *Foman*, setting aside factor (4), futility. They are: (1) undue delay, (2) bad faith or dilatory motive, (3) undue prejudice, or (5) repeated failure to correct deficiencies. This cross-motion does not come late. It was brought timely, in response to BCSSS's motion to dismiss—itself brought quite late, more than two years after BCSSS had answered the Complaint. There are no indications of bad faith or a dilatory motive. Indeed, the reason for the Parents' motion to amend (BCSSS's pointing out of alleged defects in the Complaint) is obvious, and it is not a discreditable one. Dilatoriness is not of particular concern; no stay is in place, and the case has continued to progress while the motions were pending. There has been no failure, repeated or otherwise, to correct deficiencies; indeed, BCSSS appears to fault the Parents for attempting to amend their allegations in response to this, BCSSS's first motion to dismiss.

That leaves the third *Foman* factor: whether amendment would be futile. That inquiry requires the Court to preemptively consider whether the Complaint, as amended, would survive a motion to dismiss.

### C. Futility/Motion to Dismiss

I therefore consider both the Rule 12(b)(1) and 12(b)(6) motions in relation to the proposed amended pleading. That is, I consider whether the Complaint, as amended, sets forth a claim upon which relief may be granted that lies within the subject matter jurisdiction of this Court.

As noted above, BCSSS is named only in the state law wrongful death and survivorship counts (Counts One and Two). The claim essentially sounds in negligence. The Act confers a cause of action "[w]hen the death of a person is caused by a wrongful act, neglect or default, such as would, if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury." N.J. Stat. Ann. § 2A:31-1. The Parents, as survivors and administrators ad prosequendum, are entitled to maintain the action. *Id.* § 2A: 31-2. In the wrongful death context, as elsewhere, the tort of negligence has four essential elements: "(1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages." *Davis v. Brickman Landscaping, Ltd.*, 219 N.J. 395, 406, 98 A.3d 1173, 1179 (2014) (wrongful death case, quoting *Jersey Central Power & Light Co. v. Melcar Util. Co.*, 212 N.J. 576, 594, 59 A.3d 561 (2013)).

The primary negligence pled here belongs to the Paterson school system defendants or the K&M bus company defendants. The Paterson school system was allegedly placed on notice that the minibus might be inappropriate for Onynx, and that BCSSS had recommended separate transportation for Onynx. It also knew that Onynx had engaged in dangerous behavior, including leaving the school grounds and walking in traffic; that she had expressed dislike for riding on the bus; and that she had refused to board the bus at Venture. (Cplt. ¶ 21(a)–(k)) The K&M bus company defendants were allegedly negligent in that they commingled students from two different programs, thus lengthening the ride; failed to provide an adequately trained bus driver and two aides; and did employ a bus driver and aide who failed to take adequate precautions to prevent the accident. (Cplt. ¶ 47)

6

From amended paragraph 46, quoted above, it is clear that BCSSS is alleged to have contributed to the causation of, and to be vicariously liable for, the negligence that allegedly caused the death of Onynx. In particular, BCSSS, "acting through Carlos Alvarez, its Teacher in Charge and Case Manager for Onynx, and its other agents, servants and employees whose identity is presently unknown, was negligent in that, inter alia," it failed to provide the Paterson school defendants and the K&M bus company defendants with adequate information about Onynx's disabilities, and behaviors; that BCSSS failed to disclose adequately that Onynx felt stigmatized by and disliked the small and distinctive minibus used to transport her, and that by commingling two routes, K&M was prolonging the ride; and that Onynx's feelings had manifested themselves in reckless and dangerous behavior. BCSSS and its agents, the Complaint alleges, had a legal duty of care to protect Onynx's safety. In order to fulfill that duty, it is further alleged, BCSSS and its agents were obligated to convey such information, which would have caused other defendants to take further remedial action. Thus, the actions of BCSSS and its agents "were palpably and objectively unreasonable and demonstrate reckless indifference to Onynx's health, welfare and safety. [BCSSS] is vicariously liable for the negligent and palpably unreasonable acts and omissions of Carlos Alvarez, and of its other agents, servants and employees...." (Am. Cplt. ¶ 46)

Confusingly, Alvarez seems to have been the conduit for some of the very information that the Parents say BCSSS kept from the Paterson schools and the bus company. That, however, goes to the ultimate merits, not to the viability of the claim at the pleading stage. This complaint, I find, adequately sets forth a duty of a duty of care, breach of that duty, actual and proximate causation, and resulting damages.

BCSSS adds that it is immune under the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:2-3(a). In order to make that argument, however, it recasts the claim as one of "educational malpractice." (Def. Br., ECF no. 37-1, at 9) (quoting *Myers v. Medford Lakes Bd. Of Ed.*, 199 N.j. Super. 511 (App. Div. 1985) ("N.J.S.A. 59:2-3(a) grants immunity from liability for exercises of

7

judgment or discretion, such as the evaluation of a course of education for plaintiff.")). The claim, however, is not one of misjudgment in designing an educational regime; it is one of breach of a duty of care with respect to a student's physical safety.[2] Any further immunity arguments are fact-dependent and may be raised on summary judgment at the close of discovery.

The causes of action against BCSSS are pleaded solely under state law, and the parties are not of diverse citizenship. *See* 28 U.S.C. § 1332(a). If this Court possesses subject matter jurisdiction over these State law claims, then, it must be by virtue of the Supplemental Jurisdiction statute, 28 U.S.C. § 1367, quoted in the margin.[3]

This case is one in which the "district courts have original jurisdiction." 28 U.S.C. § 1367(a). Under 28 U.S.C. § 1331, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." This Complaint asserts claims under three

---

[2] A second objection, failure to plead *respondeat superior*, was seemingly remedied by the new allegations in ¶ 49, which state that BCSSS is liable vicariously for the acts of its agents, including Alvarez.

[3]

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

....

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(a) & (c).

8

federal statutes: the Rehabilitation Act § 504, 29 U.S.C. § 794, the Americans with Disabilities Act, 42 U.S.C. § 12101, and the federal Civil Rights Act, 42 U.S.C. § 1983. Not all of the claims in the Complaint, of course, are federal claims, but the presence of those three federal claims suffices to meet the "original jurisdiction" requirement of the Supplemental Jurisdiction statute. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 563, 125 S. Ct. 2611, 2623 (2005).

Now it is true that those particular federal-law Counts do not name BCSSS as a defendant. The Supplemental Juridiction statute, however, expressly provides that "[s]uch supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."[4]

The issue, then, is whether the allegations against BCSSS are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). This portion of the statute incorporates earlier case law concerning so-called "pendent" or "ancillary" jurisdiction. The test, then as now, requires a finding that (1) "[t]he federal claim must have substance sufficient to confer subject matter jurisdiction on the court"; (2) [t]he state and federal claims must derive from a common nucleus of operative fact"; and (3) "considered without regard to their federal or state character, a plaintiffs' claims are such that he would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S. Ct. 1130 (1966). Here, the critical issue seems to be "whether state-law claims share a 'common nucleus of operative fact' with the claims that supported the district court's original jurisdiction." *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 307–08 (3d Cir. 2003), *as amended* (Nov. 14, 2003) (quoting *United Mine Workers v. Gibbs*, 383 U.S. at 725). Where that is the case, supplemental jurisdiction promotes "judicial economy, convenience and

---

[4] That principle is limited by subsection (b), which prevents certain forms of manipulation to circumvent of the complete-diversity rule. 28 U.S.C. § 1367(b). It has no application here, where jurisdiction is not founded on diversity.

9

fairness to litigants." *Id.* (quoting *Gibbs*, 383 U.S. at 726, 86 S. Ct. 1130). *See also New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492 (3d Cir. 1996).

There is a set of common facts, and a unitary injury, at the core of these claims. The Parents allege that this death was avoidable by the exercise of due care. Most directly, that duty of care allegedly belonged to the actual personnel on the bus, but the exercise of that duty of care surely required input from the educational professionals most familiar with Onynx's disability and the precautions that it would require. Most of the defendants are named in all of the Counts, both state and federal. As to them, to a great degree, the different counts are just different legal theories applied to the same facts. As to state-law Counts One and Two, however, BCSSS is added to the list. BCSSS, it is alleged, failed to supply certain critical information to the Paterson school system defendants and the K&M bus company defendants. The information that those defendants possessed or did not possess, and the reasons they did or did not possess it, would surely be part of the case, with or without the presence of BCSSS. The accident and the manner in which it occurred would surely be part of the case, whether pursued against all defendants together or separately against BCSSS. I note in passing, although I place no great reliance on it, that the defendants have asserted cross-claims for contribution and indemnity, further cross-entangling the claims against them.

Setting aside jurisdictional issues, these are allegations and claims that I would expect to see tried together in a single case. In short, these facts are so closely intertwined that the case may be said to constitute a single case or controversy, such that supplemental jurisdiction is appropriate.

BCSSS urges that the court should nevertheless decline to exercise its supplemental jurisdiction on discretionary grounds. In particular, BCSSS asserts that the state claim "substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2). In a trivial sense, that is true; BCSSS notes that it is named as a defendant in two state claims, and zero federal claims. Something like that,

10

however, will always be true in a case of supplemental *party* jurisdiction. If that were enough to establish the "predominance" exception, it would nullify the statute's express authorization of "supplemental jurisdiction . . . involv[ing] the joinder or intervention of additional parties." 28 U.S.C. § 1367(a).

Rather, I look to the case as a whole. The state-law counts do not predominate over the federal-law claims, considered as a whole, as asserted against all defendants.

I consider also that a discretionary declination of supplemental jurisdiction (as opposed to a jurisdictional defect, which can be raised at any time) is a wasting asset. The desirability of such a declination tends to diminish over time. BCSSS did not make its motion until two years after it had filed its answer, when fact discovery was nearly complete.[5] Little is to be gained by backtracking to the pleading stage. At this point in the litigation, a declination of the claims against BCSSS would not serve the goals of judicial economy, convenience and fairness to litigants.

## II.  CONCLUSION

For the reasons stated above, the motion to dismiss the Complaint (ECF no. 37 is denied, and the motion to amend ¶ 46 of the Complaint (ECF no. 41) is granted. The complaint in its amended form, ECF no. 41-2, is deemed to be filed, and is now the operative pleading in the case. The answers of all other defendants shall be deemed to apply to the amended complaint. BCSSS may supplement its earlier-filed answer with a short pleading responding to paragraph 46 only. An appropriate Order accompanies this Opinion.

Dated: July 21, 2017

KEVIN MCNULTY
United States District Judge

---

[5] The docket contains a letter order of the Magistrate Judge, dated June 14, 2017, providing that the discovery deadline will be extended by 30 days, with no further extensions. (ECF no. 55)

11